79.    On January 6, 2003, Wyeth abandoned its long-standing marketing

strategy of promoting the long-term use of Premarin and Prempro.  Wyeth announced

the reversal of its long-held promotional message in a "Dear Doctor" letter to Health

Care Professionals that explained it was adopting new labeling for its hormone therapy

drugs in light of the WHI findings.

80.    According to the January 6, 2003, "Dear Doctor" letter, the labeling

changes include boxed warnings:

> [W]hich state that estrogens and estrogens plus progestin
> therapies should not be used for prevention of
> cardiovascular disease . . . The boxed warning also includes
> information [stating that because of the WHI study] . . .
> estrogens and estrogens plus progestin **should be
> prescribed for the shortest duration consistent with
> treatment goals.**

(Emphasis added.)

81.    In early June 2003, Wyeth commenced a new public marketing campaign

with a full-page advertisement placed in 180 newspapers nationwide.  The

advertisement, styled "A Message from Wyeth," disclosed that Wyeth was abandoning

its decades long strategy of promoting long-term usage of Premarin and Prempro for

post-menopausal women for a variety of conditions.

> Hormone therapy is not a lifelong commitment.  [¶]  As a
> result of recent studies, we know that hormone therapy
> should not be used to prevent heart disease.  These studies
> also report an increased risk of heart attack, stroke, breast
> cancer, blood clots, and dementia.  Therefore, it is
> recommended that hormone therapy (estrogen, either alone
> or with progestin) **should be taken for the shortest
> duration** at the lowest effective dose.

(*Philadelphia Inquirer*, June 1, 2003, at C6; emphasis added).

21

82.    Wyeth had recklessly and willfully failed to conduct adequate pre-approval research and post-approval surveillance to establish the safety of long-term hormone therapy. Nonetheless, Wyeth had vigorously promoted long term hormone therapy use. The studies, which the WHI and NCI conducted, could have and should have been conducted many years ago by Wyeth-- and before embarking on its long-term usage marketing campaign. Had it conducted the necessary studies and diligent post-marketing surveillance, Wyeth would have learned years ago that hormone therapy causes cardiovascular diseases, is marginally effective in preventing bone loss, does not promote well being, causes a number of cancers and dementia, and is even harmful on a short-term basis by increasing the risk of breast cancer.

## IV. **FRAUDULENT CONCEALMENT**

83.    Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of the facts as alleged herein by Wyeth. Plaintiffs have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on her part. Plaintiffs could not reasonably have discovered the dangerous nature of and unreasonable adverse side effects associated with Premarin, Prempro, Premphase, and medroxyprogesterone acetate prior to July 9, 2002.

84.    Wyeth is and was under a continuing duty to disclose the true character, quality, and nature of its hormone therapy drugs, including Premarin, Prempro, Premphase, and medroxyprogesterone acetate, to the plaintiff. Because of its concealment of the true character, quality and nature of their hormone therapy drugs,

22

Wyeth is estopped from relying on any statute of limitations defense.

## V.  CAUSES OF ACTION

## COUNT I
## NEGLIGENCE

85.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further allege:

86.     At all relevant times, Wyeth had and continues to have a duty to exercise reasonable care to properly prepare, design, research, develop, manufacture, inspect, label, market, promote, and sell its hormone therapy drugs, including Premarin, Prempro, Premphase, and medroxyprogesterone acetate, which it introduced into the stream of commerce, including a duty to insure its hormone therapy drugs did not cause users to suffer from unreasonable, dangerous or untoward adverse side effects.

87.     At all times relevant, Wyeth owed a duty to properly warn consumers of the risks, dangers, and adverse side effects of its hormone therapy drugs.

88.     Wyeth breached its duty by failing to exercise ordinary care in the preparation, design, research, development, manufacturing, inspection, labeling, marketing, promotion, and sale of their hormone therapy drugs, including Premarin, Prempro, Premphase, and medroxyprogesterone acetate, which it introduced into the stream of commerce, because Wyeth knew or should have known that its hormone therapy drugs created the risk of unreasonable, dangerous or untoward adverse side effects.

23

89.    Wyeth knew, or in the exercise of reasonable care, should have known that its hormone therapy drugs, including Premarin, Prempro, Premphase, and medroxyprogesterone acetate were of such a nature that, if not properly prepared, designed, researched, developed, manufactured, inspected, labeled, marketed, promoted, and sold, they were likely to cause injury to those who took their drugs.

90.    Wyeth was negligent in the preparation, design, research, development, manufacturing, inspection, labeling, marketing, promotion, and selling of its hormone therapy drugs, including Premarin, Prempro, Premphase, and medroxyprogesterone acetate, in that it:

> (i)    Failed to use due care in the preparation of its hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;
>
> (ii)   Failed to use due care in the design of its hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;
>
> (iii)  Failed to conduct adequate pre-clinical testing and research to determine the safety of its hormone therapy drugs;
>
> (iv)   Failed to conduct adequate post-marketing surveillance to determine the safety of its hormone therapy drugs;
>
> (v)    Failed to accompany its products with proper warnings regarding all possible adverse side effects associated with the use of its hormone therapy drugs and the comparative severity and duration of such adverse effects;

24

(vi)    Failed to use due care in the development of its hormone

therapy drugs to prevent the aforementioned risks to

individuals when the drugs were ingested;

(vii)   Failed to use due care in the manufacture of is hormone

therapy drugs to prevent the aforementioned risks to

individuals when the drugs were ingested;

(viii)  Failed to use due care in the inspection of its hormone

therapy drugs to prevent the aforementioned risks to

individuals when the drugs were ingested;

(ix)    Failed to use due care in the labeling of its hormone therapy

drugs to prevent the aforementioned risks to individuals when

the drugs were ingested;

(x)     Failed to use due care in the marketing of its hormone

therapy drugs to prevent the aforementioned risks to

individuals when the drugs were ingested;

(xi)    Failed to use due care in the promotion of its hormone

therapy drugs to prevent the aforementioned risks to

individuals when the drugs were ingested;

(xii)   Failed to use due care in the selling of its hormone therapy

drugs to prevent the aforementioned risks to individuals when

the drugs were ingested;

(xiii)  Failed to provide adequate training and information to

healthcare providers for the appropriate use of its hormone

25

therapy drugs;

(xiv)   Failed to warn the plaintiff and her healthcare providers, prior
to actively encouraging and promoting the sale of its hormone
therapy drugs, either directly or indirectly, orally or in writing,
about the following:

- the need for comprehensive, regular medical
monitoring to insure early discovery of potentially fatal
strokes, heart attacks, venous thromboembolism,
cardiovascular disease, breast cancer, ovarian
cancer, and other adverse side effects;

- the possibility of becoming disabled as a result of the
use of the drugs;

- the adverse side effects associated with the use of
the drugs, including, but not limited to, strokes, heart
attacks, venous thromboembolism, cardiovascular
disease, breast cancer, and ovarian cancer; and,

(xv)   Was otherwise careless and negligent.

91.   Despite the fact that Wyeth knew or should have known that its hormone
therapy drugs caused unreasonable and dangerous side effects which many users
would be unable to remedy by any means, Wyeth continued to promote and market its
drugs to consumers, including plaintiff, when safer and more effective methods of
countering the negative health effects of menopause, and of prevention of osteoporosis

and other disease states claimed by Wyeth to be prevented by its hormone therapy, were available.

92.    Wyeth knew or should have known that consumers such as the plaintiff would foreseeably suffer injury as a result of its failure to exercise ordinary care as described herein.

93.    Wyeth's failure to warn was reckless and without regard for the public's safety and welfare. Wyeth misled both the medical community and the public at large, including plaintiff, by making false representations about the safety of its products. Wyeth downplayed, understated, and disregarded its knowledge of the serious and permanent side effects associated with the use of hormone therapy drugs despite available information demonstrating that its products were likely to cause serious and sometimes fatal side effects to users.

94.    Wyeth was or should have been in possession of evidence demonstrating that its products caused serious side effects. Nevertheless, Wyeth continued to market its products by providing false and misleading information with regard to their safety and efficacy.

95.    Wyeth's actions, described above, were performed willfully, intentionally and with reckless disregard for the rights of plaintiff and the public.

96.    As a result of Wyeth's conduct, plaintiff suffered the injuries and damages specified herein.

27

## COUNT II
## STRICT PRODUCT LIABILITY

97.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here and further allege as follows:

98.    Wyeth is a manufacturer and/or supplier of hormone therapy drugs.

99.    The hormone therapy drugs manufactured and/or supplied by the Defendant drug manufacturers were defective in design or formulation in that, when they left the hands of Wyeth, the foreseeable risks exceeded the benefits associated with the design or formulation.

100.   The hormone therapy drugs were expected to and did reach Plaintiff Charlotte Czwakiel without substantial change in condition.  Alternatively, the hormone therapy drugs manufactured and/or supplied by Wyeth were defective in design or formulation, in that when they left the hands of the Wyeth, they were unreasonably dangerous and more dangerous than an ordinary consumer would expect.

101.   The hormone therapy drugs manufactured and/or supplied by Wyeth were defective due to inadequate warning and/or inadequate clinical trials, testing and study, and inadequate reporting regarding the results of it.

102.   The hormone therapy drugs manufactured and/or supplied by Wyeth were defective due to inadequate post-marketing warning or instruction because, after Wyeth knew or should have known of the risk of injury from the drugs, Wyeth failed to provide adequate warnings to the medical community and women and, despite this information and knowledge, continued to promote the product as safe and effective.

28

103.    As the direct and legal result of the defective condition of the hormone

therapy drugs as manufactured and/or supplied by Wyeth, and of the negligence,

carelessness, other wrongdoing and actions of Wyeth described herein:

      a.    Charlotte Czwakiel was injured in health, strength and
          activity and suffered injuries to body and mind, and with
          reasonable certainty will continue to suffer such losses.

      b.    Charlotte Czwakiel suffered economic loss, including loss of
          earnings and loss of earning capacity, and with reasonable
          certainty will continue to suffer such losses.

      c.    Charlotte Czwakiel required reasonable and necessary
          health care, attention and services and she did incur
          medical, health, incidental and related expenses, and with
          reasonable certainty will continue to require such care and
          incur such expenses.

### COUNT III
### STRICT PRODUCT LIABILITY (FAILURE TO WARN)

104.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set

forth here and further allege as follows:

105.    Wyeth is a manufacturer and/or supplier of hormone therapy drugs.

106.    The hormone therapy drugs manufactured and/or supplied by Wyeth were

not accompanied by proper warnings to physicians and the medical community

regarding all possible adverse side effects associated with the use of the drugs and the

comparative severity and duration of such adverse effects.

107.    The warnings and information given to the medical community did not

accurately reflect the symptoms, scope or severity of the potential side effects.

108.    Wyeth failed to perform adequate testing in that adequate testing would

have shown that the drugs possessed serious potential side effects with respect to

29

which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

109.   The hormone therapy drugs manufactured and/or supplied by Wyeth were defective due to inadequate post-marketing warning or instruction because, after Wyeth knew or should have known of the risk of injury and death from hormone therapy drugs, Wyeth failed to provide adequate warnings to physicians and women and continued to aggressively promote the products.

110.   Had adequate warnings or instructions been provided, Charlotte Czwakiel would not have suffered harmful side effects.

111.   As the direct and legal result of the defective condition of hormone therapy drugs as manufactured and/or supplied by Wyeth, and of the negligence, carelessness, other wrongdoing and actions of Wyeth described herein:

   a.   Charlotte Czwakiel was injured in health, strength and activity and suffered injuries to body and mind, and with reasonable certainty will continue to suffer such losses.

   b.   Charlotte Czwakiel suffered economic loss, including loss of earnings and loss of earning capacity, and with reasonable certainty will continue to suffer such losses.

   c.   Charlotte Czwakiel required reasonable and necessary health care, attention and services and she did incur medical, health, incidental and related expenses, and with reasonable certainty will continue to require such care and incur such expenses.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

112.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further allege:

30

113.    Wyeth, through description, affirmation of fact, and promise relating to its hormone therapy drugs, including Premarin, Prempro, Premphase, and medroxyprogesterone acetate, to the FDA, prescribing physicians, and the general public, including the plaintiff, expressly warranted that its products were both efficacious and safe for their intended use.

114.    These warranties came in the form of: (i) publicly-made written and verbal assurances of the safety and efficacy of hormone therapy drugs by Wyeth, (ii) press releases, interviews and dissemination via the media of promotional information, the sole purpose of which was to create and increase demand for hormone therapy drugs, which utterly failed to warn of the risks inherent to the ingestion of hormone therapy; (iii) verbal assurances made by Wyeth regarding hormone therapy, and the downplaying of any risk associated with the drugs; (iv) false and misleading written information, supplied by Wyeth, and published in the *Physicians Desk Reference* on an annual basis, upon which physicians were forced to rely in prescribing hormone therapy drugs during the period of plaintiffs' ingestion of hormone therapy drugs, including, but not limited to information relating the recommended duration of the use of the drugs; (v) promotional pamphlets and brochures published and distributed by Wyeth and directed to consumers; and (vi) advertisements.  The documents referred to in this paragraph were created by and at the direction of Wyeth and, therefore, are in its possession and control.

115.    At the time of these express warranties, Wyeth had knowledge of the purpose for which hormone therapy was to be used and warranted it to be in all aspects safe, effective, and proper for such purpose.

31

116.    Wyeth's drugs do not conform to these express representations in that they are neither safe nor effective and their use produce serious adverse side effects.

117.    As such, Wyeth's products were neither in conformity to the promises, descriptions or affirmations of fact made about these drugs nor adequately contained, packaged, labeled or fit for the ordinary purposes for which such goods are used.

118.    Wyeth thereafter breached their express warranties to plaintiffs by: (i) manufacturing, marketing, packaging, labeling, and selling hormone therapy to the plaintiff in such a way that misstated the risks of injury, without warning or disclosure thereof by package and label of such risks to the plaintiff or the prescribing physician or pharmacist, or without so modifying or excluding such express warranties; (ii) manufacturing, marketing, packaging, labeling, and selling hormone therapy to plaintiff, which failed to counteract the negative health effects of menopause in a safe and permanent manner and without injury; and (iii) manufacturing, marketing, packaging, labeling, and selling hormone therapy to plaintiff, thereby causing the plaintiff's serious physical injury and pain and suffering.

119.    In utilizing the aforementioned product, Plaintiff relied on the representations and foregoing express warranties of Wyeth. Said warranties and representations were false in that the aforementioned products were not safe and were unfit for the uses or which they were intended.

120.    Wyeth's failure to warn was reckless and without regard for the public's safety and welfare. Wyeth misled both the medical community and the public at large, including plaintiff, by making false representations about the safety of its products. Wyeth downplayed, understated, and disregarded its knowledge of the serious and

32

permanent side effects associated with the use of hormone therapy, despite available information demonstrating that it was likely to cause serious and sometimes fatal side effects to users.

121.   Wyeth was or should have been in possession of evidence demonstrating that its products caused serious side effects. Nevertheless, Wyeth continued to market its products by providing false and misleading information with regard to their safety and efficacy.

122.   Wyeth's actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of the plaintiff and the public.

123.   As a result of Wyeth's conduct, Plaintiffs suffered the injuries and damages specified herein.

124.   Accordingly, Plaintiffs seek and are entitled to punitive damages in an amount to be determined at trial.

## COUNT V
## BREACH OF IMPLIED WARRANTY

125.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here and further allege as follows:

126.   At the time Wyeth marketed, sold, and distributed hormone therapy drugs for use by women such as Charlotte Czwakiel, Wyeth knew of the use for which the drugs were intended, and impliedly warranted the products to be of merchantable quality and safe and fit for such use.

33

127.   Charlotte Czwakiel reasonably relied upon the skill and judgment of Wyeth

as to whether the hormone therapy drugs were of merchantable quality and safe and fit

for their intended use.

128.   Contrary to such implied warranty, the hormone therapy drugs were not of

merchantable quality or safe or fit for their intended use, because the products were and

are unreasonably dangerous and unfit for the ordinary purposes for which they were

sold.

129.   As a direct and proximate result of the breach of implied warranty,

Plaintiffs suffered injuries, harm, and economic loss.

130.   As the direct and legal result of the defective condition of the hormone

therapy drugs as manufactured and/or supplied by Wyeth, and of the breach of implied

warranty:

   a.   Charlotte Czwakiel was injured in health, strength and
        activity and suffered injuries to body and mind, and with
        reasonable certainty will continue to suffer such losses.

   b.   Charlotte Czwakiel suffered economic loss, including loss
        of earnings and loss of earning capacity, and with
        reasonable certainty will continue to suffer such losses.

   c.   Charlotte Czwakiel required reasonable and necessary
        health care, attention and services and she did incur
        medical, health, incidental and related expenses, and with
        reasonable certainty will continue to require such care and
        incur such expenses.

34

## COUNT VI
## FRAUD

131.    Plaintiffs incorporate by reference all other paragraphs of this Complaint
as if fully set forth herein at length, and further allege:

132.    Wyeth, having undertaken to prepare, design, research, develop,
manufacture, inspect, label, market, promote, and sell their hormone therapy drugs,
including Premarin, Prempro, Premphase, and medroxyprogesterone acetate, owed a
duty to provide accurate and complete information regarding these products.

133.    Wyeth's advertising program, by containing affirmative misrepresentations
and omissions, falsely and deceptively sought to create the image and impression that
the use of its hormone therapy drugs, including Premarin, Prempro, Premphase, and
medroxyprogesterone acetate were safe for human use, had no unacceptable side
effects, and would not interfere with daily life.

134.    Wyeth intentionally encouraged women and plaintiff Charlotte Czwakiel to
remain on hormone therapy for a longer period of time than Wyeth knew or should have
known was safe and effective.

135.    On information and belief, Plaintiffs aver that Wyeth purposefully
concealed, failed to disclose, misstated, downplayed, and understated the health
hazards and risks associated with the use of hormone therapy. Wyeth, through
promotional literature, deceived potential users and prescribers of the drugs by relaying
only allegedly positive information, while concealing, misstating, and downplaying
known adverse and serious health effects with the intention that the recipient of the
information would rely on the information contained therein. Wyeth falsely and

35

deceptively kept relevant information from potential hormone therapy users and minimized prescriber concerns regarding the safety and efficacy of its drugs.

136.    Plaintiffs justifiably relied to their detriment upon Wyeth's intentional misrepresentations concerning its hormone therapy drugs.

137.    In particular, in the materials disseminated by Wyeth, it falsely and deceptively misrepresented or omitted a number of material facts regarding its hormone replacement drugs, including Premarin, Prempro, Premphase, and medroxyprogesterone acetate, including, but not limited to, the following:

> (i)    The presence and adequacy of the testing of its hormone therapy drugs, both pre-and post-marketing; and,
>
> (ii)    The severity and frequency of adverse health effects caused by is hormone therapy drugs.

138.    The failure of Wyeth to warn was reckless and without regard for the public's safety and welfare. Wyeth misled both the medical community and the public at large, including plaintiffs, by making false representations about the safety of its hormone therapy drugs.

139.    Wyeth was or should have been in possession of evidence demonstrating that its product caused serious side effects. Nevertheless, Wyeth continued to market its products by providing false and misleading information with regard to their safety and efficacy.

140.    Wyeth's actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of plaintiffs and the public.

141.    As a result of Wyeth's conduct, plaintiffs suffered the injuries and

damages specified herein and are entitled to damages in an amount to be determined

at trial.

## COUNT VII
## JOINT VENTURES, PARENT/SUBSIDIARIES, AND/OR
## SUCCESSOR CORPORATION

142.    The plaintiffs repeat and reallege, as if fully set forth herein, each and

every allegation contained in the above paragraphs and further alleges:

143.    As a result of its participation in various joint ventures, parent/subsidiary

relationships, and/or successor corporations, Wyeth is liable to plaintiffs.

144.    As a result of its negligent supervision and actual supervision of various

joint ventures, parent/subsidiary relationships, and/or successor corporations, Wyeth is

liable to the plaintiffs.

145.    As a result of the invalidity of various indemnification agreements, Wyeth

is liable to plaintiffs.

146.    Wyeth is liable to plaintiffs, as alter egos of its joint ventures,

parent/subsidiary relationships, and/or successor corporations.

## COUNT VIII
## LOSS OF CONSORTIUM

147.    Plaintiffs incorporate by reference all other paragraphs of this Complaint

as if fully set forth herein at length, and further allege:

37

148.   Plaintiff Raymond Czwakiel was at all times relevant hereto the spouse of Plaintiff Charlotte Czwakiel, and lived and cohabited with her.

149.   Mr. Czwakiel has necessarily paid and has become liable to pay for medical aid, treatment and for medications, and will necessarily incur further expenses of a similar nature in the future.

150.   Mr. Czwakiel has been caused, presently and in the future, to suffer the loss of his spouse's companionship, services, society, and the ability of Mrs. Czwakiel, has in those respects been impaired and depreciated, and the marital association between husband and wife has been altered and, accordingly, has been caused great mental anguish.

151.   Mr. Czwakiel is entitled to damages because Wyeth's failure to warn was reckless and without regard for the public's safety and welfare.  Wyeth misled both the medical community and the public at large, including Plaintiffs herein, by making false representations about the safety of their products.  Wyeth downplayed, understated and disregarded its knowledge of the serious and permanent side effects associated with the use of hormone therapy, despite available information demonstrating their products were likely to cause serious and sometimes fatal side effects to its users.

152.   Accordingly, the Plaintiffs seek and are entitled to compensatory damages in an amount to be determined at trial.


**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

38

(i)    Compensatory damages in an amount in excess of $75,000.00 as

provided by law and to be supported by the evidence at trial;

(ii)    An award of attorney's fees, pre-judgment and post-judgment interest, and

the costs of suit, as provided by law;

(iii)    Such other legal and equitable relief as this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims so tribal in this action.


Dated:  September 1, 2004


Donald R. Grady, Jr., Esq.
SHEFF LAW OFFICES, P.C.
10 Tremont Street
Daniel Webster Suite
Boston, MA  02108
(617) 227-7000
BBO # 544841B

Tobias L. Millrood, Esq.
Steven D. Resnick, Esq.
**SCHIFFRIN & BARROWAY, LLP**
Three Bala Plaza East, Suite 400
Bala Cynwyd, Pennsylvania 19004
(610) 667-7706
(610) 667-7056 (Fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)  **Charlotte Czwakiel and Raymond Czwakiel v. Wyeth, Inc.; Wyeth Pharmaceuticals, Inc.**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   [ ]  I.  160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ]  II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   [X]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   [ ]  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   [ ]  V.  150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   Not applicable

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?    YES [ ]  NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)    YES [ ]  NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?    YES [ ]  NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?    YES [ ]  NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).    YES [X]  NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
   Eastern Division [X]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
   Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)    YES [ ]  NO [X]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Donald R. Grady, Jr., Esq., Sheff Law Offices, P.C.

ADDRESS  10 Tremont Street, Boston, MA  02108

TELEPHONE NO.  (617) 227-7000

(Coversheetlocal.wpd - 10/17/02)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Charlotte Czwakiel and Raymond Czwakiel

## DEFENDANTS
Wyeth, Inc. and Wyeth Pharmaceuticals, Inc.

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Donald R. Grady, Jr.
Sheff Law Offices, P.C.
10 Tremont Street
Boston, MA 02108

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** [ ] 362 Personal Injury— Med. Malpractice | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [X] 365 Personal Injury— Product Liability | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 340 Marine | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 690 Other |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | | [ ] 862 Black Lung (923) |
| **REAL PROPERTY** | **CIVIL RIGHTS** | [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) |
| [ ] 210 Land Condemnation | [ ] 441 Voting | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 864 SSID Title XVI |
| [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | **Habeas Corpus** | | **FEDERAL TAX SUITS** |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 535 Death Penalty | | |
| [ ] 290 All Other Real Property | | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 871 IRS—Third Party 26 USC 7609 |
| | | [ ] 550 Civil Rights | | |
| | | [ ] 555 Prison Condition | | |

Other statutes column continued:
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Negligence, Strict Products Liability, Strict Products Liability (Failure to Warn), Breach of Express Warranty, Breach of Implied Warranty, Fraud, Joint Ventures, Parent/ Subsidiaries, and/or Successor Corporation

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY (See instructions):
Not applicable

JUDGE _____    DOCKET NUMBER _____

DATE 9/1/04

SIGNATURE OF ATTORNEY OF RECORD _____

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____